UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM RICHARD KLYCZEK; and HOUSING
OPPORTUNITIES MADE EQUAL, INC.,

                    Plaintiffs,

                                                                    1:15-CV-0963 (GTS)

v.

CATHERINE STRAMAGLIA SHANNON,

                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

WESTERN N.Y. LAW CENTER, INC.            MATTHEW A. PARHAM, ESQ.
   Counsel for Plaintiffs
237 Main Street, Suite 1130
Buffalo, New York 14203

PERSONIUS MELBER, LLP                     RODNEY O. PERSONIUS, ESQ.
   Counsel for Defendant
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202

GLENN T. SUDDABY, Chief United States District Judge,
United States District Court for the Northern District of New York[1]

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Adam Klyczek and Housing

Opportunities Made Equal, Inc. ("Plaintiffs") against Catherine Shannon ("Defendant"), is

Defendant's motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief

---

[1]        Due to the claims in this action being asserted against Defendant, who is employed by the
United States District Court for the Western District of New York, this action was temporarily assigned to
Chief Judge Suddaby of the Northern District of New York by Chief Judge Robert A. Katzmann of the
United States Court of Appeals for the Second Circuit.  (Dkt. No. 4; Docket Entry dated Dec. 29, 2015.)

may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 8.)  For the reasons set forth

below, Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiffs' Complaint

The Complaint asserts two causes of action alleging that Defendant violated the Fair

Housing Act ("FHA") and N.Y. Exec. Law § 296(5)(a)(1) ("NYSHRL") in the following three

ways: (1) Defendant discriminated against Plaintiff Klyczek, a person with disabilities, by

terminating his month-to-month tenancy because of his service animal; (2) Defendant refused to

make a reasonable accommodation for Plaintiff Klyczek when such an accommodation was

necessary to afford him an equal opportunity to use and enjoy a dwelling; and (3) Defendant

retaliated against Plaintiff Klyczek by terminating his tenancy when he exercised his right to

obtain a reasonable accommodation in the form of a service animal.  (Dkt. No. 1, ¶¶ 32-44 [Pl.'s

Compl.].)

Generally, liberally construed, Plaintiffs' Complaint alleges as follows.  Plaintiff Klyczek

is a veteran of the United States Army and has been diagnosed with post-traumatic stress

disorder ("PTSD") arising from his combat military service.  (*Id.*, ¶ 5.)  On October 22, 2014,

Plaintiff Klyczek responded to an advertisement for an apartment for rent in Niagara Falls, New

York.  (*Id.*, ¶ 11.)  Plaintiff Klyczek contacted Defendant, who is the owner and landlord of the

apartment, regarding the rental.  (*Id.*)  Plaintiff Klyczek viewed the lower apartment of the

residence that Defendant was renting and, on October 27, 2014, executed a month-to-month

lease.  (*Id.*, ¶ 13.)  Between November 2014 and April 2015, Plaintiff Klyczek resided in the

rented apartment and regularly interacted with Defendant with regard to maintenance and repairs

to the property.  (*Id.*, ¶ 14.)  In April of 2015, Plaintiff Klyczek was prescribed a service dog as part of his treatment plan for his PTSD.  (*Id.*, ¶ 10.)  On April 20, 2015, Plaintiff Klyczek obtained his service dog from WNY Heroes.  (*Id.*, ¶ 15.)  The service dog was a German Shepherd puppy and was in training to become a fully certified service animal.  (*Id.*)

On April 26, 2015, Plaintiff Klyczek spoke with Defendant and informed her that he had obtained a service dog.  (*Id.*, ¶ 17.)  Defendant responded that dogs were not allowed under his lease.  (*Id.*)  Plaintiff Klyczek advised Defendant that the dog was medically necessary and came from a formal service animal program.  (*Id.*)  Plaintiff Klyczek encouraged Defendant to speak with WNY Heroes to alleviate her concerns.  (*Id.*)  On April 27, 2015, Defendant spoke with Chris Kreiger, President and Co-Founder of WNY Heroes.  (*Id.*, ¶ 18.)  Mr. Kreiger provided information regarding the WNY Heroes program and explained that service dogs were part of a medically prescribed, therapeutic process.  (*Id.*)  Defendant stated that Plaintiff Klyczek's lease did not allow dogs and that her homeowner's insurance does not provide coverage for dogs. (*Id.*)  Mr. Kreiger explained that, even if a no-dogs policy was generally imposed, federal fair housing laws required Defendant to make "reasonable accommodation" for Plaintiff Klyczek's disability by allowing him to have the dog.  (*Id.*)  Defendant repeatedly stated that she "knew the law."  (*Id.*)

On April 29, 2015, Defendant sent a realtor to the property to appraise it.  (*Id.*, ¶ 19.)  On May 1, 2015, Defendant advised Plaintiff Klyczek that she was selling the house where he was residing as a tenant and that she would entertain an offer from him to purchase the premises. (*Id.*)  On May 6, 2015, Defendant informed Plaintiff Klyczek that she required any offer to buy the house to be made by May 8, 2015.  (*Id.*, ¶ 20.)  Plaintiff Klyczek was unable to make an offer

within two days.  (*Id.*)  On May 10, 2015, Defendant sent Plaintiff Klyczek a "30-day notice to quit" requiring him to vacate the apartment by June 10, 2015.  (*Id.*, ¶ 21.)

       Thereafter, on May 16, 2015, Plaintiff Klyczek e-mailed Defendant to inform her that he was approved for a VA Home Loan.  (*Id.* ¶ 22.)  On May 17, 2015, Defendant advised Plaintiff Klyczek that she needed him out by June 10, 2015, so that she could have contractors work on the house to get it ready for sale.  (*Id.*, ¶ 21.)  On May 18, 2015, Plaintiff Klyczek contacted Defendant again to inform her that he wanted to make a cash offer to purchase the house.  (*Id.*, ¶ 23.)  In response, Defendant removed the "for sale" sign from the property and told Plaintiff Klyczek, without considering his cash offer, that the house was no longer for sale.  (*Id.*)  On May 21, 2015, in response to Plaintiff Klyczek's request for more time to vacate the premises, Defendant sent him a revised "30-day notice to quit," requiring him to vacate the apartment by June 30, 2015.  (*Id.*, ¶ 24.)  On June 19, 2015, Defendant informed Plaintiff Klyczek by e-mail that she had re-rented the apartment as a furnished apartment to a tenant moving in on July 1, 2015.  (*Id.*, ¶ 25.)  Accordingly, Defendant requested that Plaintiff Klyczek vacate the apartment by June 30, 2015, so that she could move furniture in overnight before the new tenant moved in. (*Id.*)

       Based upon the foregoing allegations, Plaintiffs allege that Defendant's plan to sell her house was a "sham" and, in reality, Defendant terminated Plaintiff Klyczek's tenancy because she did not want his service dog living at the house.  (*Id.*, ¶ 27.)  As a result, Plaintiffs allege that Plaintiff Klyczek suffered great inconveniences, such as being homeless as well as living in temporary group housing during the months following the end of his tenancy.  (*Id.*, ¶ 30.)  In addition to the humiliation and emotional distress this situation caused Plaintiff Klyczek, he was

also required to surrender his service animal when he became homeless, resulting in the loss of

the emotional and therapeutic benefit of his relationship with the animal.  (*Id.*)

      **B.**       **Parties' Briefing on Defendant's Motion to Dismiss**

            **1.**       **Defendant's Memorandum of Law**

Defendant asserts three arguments in support of her motion to dismiss.  First, Defendant

argues that she is not subject to FHA liability because the single-family house exemption under

42 U.S.C. § 3603(b)(1) applies to her property for four reasons: (a) Defendant has never owned

more than three single-family houses at any one time; (b) Defendant did not reside in the house,

nor has the house been sold more than once in a 24-month period; (c) Defendant has not held an

interest in the proceeds of the sale or rental of more than three single-family houses at any one

time; and (d) Defendant did not employ the services or facilities of a real estate professional in

connection with the sale or rental of the house, or publish advertisements or notices in violation

of the FHA.  (Dkt. No. 9, at 10-14 [Def.'s Mem. of Law].)

Second, Defendant argues that she is not subject to FHA liability for the alternative

reason that the Complaint fails to allege facts plausibly suggesting that the property is a multi-

family house.  (*Id.* at 12.)  More specifically, Defendant argues that, while the FHA does not

define "single-family house," the Complaint alleges that Plaintiff Klyczek occupied the lower

apartment of the residence while the upper apartment was "vacant and uninhabitable." (*Id.*)

Therefore, Defendant argues that the property constituted a single-family house for purposes of

the FHA by virtue of its occupancy by a single-family, i.e., Plaintiff Klyczek, and because no

one could have lived in the upstairs portion of the house.  (*Id.*)

Third, Defendant argues that, in the event that Plaintiffs' FHA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over their NYSHRL § 296 claim and it should therefore be dismissed as well.  (*Id.* at 14.)

### 2. Plaintiffs' Opposition Memorandum of Law

As an initial matter, Plaintiffs do not dispute that Defendant meets the four criteria provided in 42 U.S.C. § 3603(b)(1) for the single-family house exemption.  (Dkt. No. 10, at 4 n.1 [Pl.'s Opp'n Mem. of Law].)  However, with respect to whether the subject property is in fact a single-family house, Plaintiffs make the following three arguments in opposition to Defendant's motion.

First, Plaintiffs argue that courts construe the FHA exemptions narrowly in order to achieve the statute's remedial function.  (*Id.* at 4.)  Accordingly, Plaintiffs argue that the single-family house exemption should not be liberally construed to exclude a situation such as this that the FHA was clearly intended to cover.  (*Id.*)  More specifically, Plaintiffs argue that the Complaint alleges that Plaintiff Klyczek rented one of two separate apartment units in a multi-family house and that such a residence does not meet the single-family house exemption.  (*Id.* [citing *Lamb v. Sallee*, 417 F. Supp. 282, 284 (E.D. Ky. 1976) (stating that "[a] duplex is not a single-family house within the meaning of [the FHA]")].)

Second, Plaintiffs argue that Defendant's argument that courts construe the single-family house exemption based on "use," as opposed to structure/design, is flawed and not supported by case precedent.  (*Id.* at 6.)  In support of this argument, Plaintiffs cite the FHA's definition of "dwelling," which states that a dwelling includes a "portion" of a building whether the portion is either "occupied" or "designed" or "intended" for residential occupancy.  (*Id.* at 6-7 [citing 42

U.S.C. § 3602(b)].)  Based upon this definition, Plaintiffs argue that the subject residence is not exempt because the Complaint clearly alleges that it was designed and intended to house multiple families in two apartments.  (*Id.* at 7.)

In addition, Plaintiffs cite *Riccardo v. Cassidy*, 10-CV-0462, 2012 WL 651853 at *4 n.4 (N.D.N.Y. Feb. 28, 2012) (Mordue, C.J.), where Judge Mordue found that the single-family house exemption did not apply to a two-unit building because one unit was rented to the plaintiff and the other unit was vacant and being renovated to accommodate potential tenants.  (*Id.* at 7-8.)  Plaintiffs analogize *Riccardo* to the present case because both cases involve a two-unit building in which one unit was vacant and uninhabitable.  (*Id.* at 8.)

Third, and finally, Plaintiffs argue that, because there is no basis for dismissal of their FHA claim, the Court should retain supplemental jurisdiction over their NYSHRL claim.  (*Id.* at 9.)

### 3.    Defendant's Reply Memorandum of Law

Generally, Defendant asserts the following two arguments in reply to Plaintiffs' opposition memorandum of law.

First, Defendant argues that case precedent dictates that a property's use or manner of occupancy, rather than the design or number of living units contained in the structure, determines the applicability of the single-family house exemption.  (Dkt. No. 11, at 2-5 [Def.'s Reply Mem. of Law].)  In support of this argument, Defendant cites *Hogar Aguay Vida en el Desierto v. Suarez*, 829 F. Supp. 19, 22 (D.P.R. 1993), *Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009), and *Lincoln v. Case*, 340 F.3d 283, 288 (5th Cir. 2003).  (*Id.* at 3-4.)

In *Hogar*, the court found that a two-story house, comprised of separately equipped single-family apartments on each floor, constituted a single-family house. *Hogar*, 829 F. Supp. at 22. The defendant and his family lived primarily in one apartment, while the defendant's son lived in the other. *Id.* Due to physical impairments, however, the defendant lived "interchangeably" in both apartments, leading the court to conclude that it was a single-family residence. *Id.* Here, Defendant argues that the *Hogar* court looked to how the residence was used in determining whether it was a single-family house, rather than strictly considering how it was designed. (Dkt. No. 11, at 3 [Def.'s Reply Mem. of Law].)

In *Donovan*, a condo had been subdivided and rented to three unrelated occupants who shared a kitchen and a bathroom. *Donovan*, 569 F.3d at 679. The court found that the condo was not a single-family dwelling because "Fung rented it to three unrelated persons; that's not a single family by anyone's definition." *Id.* at 682. Here, once again, Defendant argues that the decisive factor in this case is the manner in which the condo was occupied rather than its design. (Dkt. No. 11, at 4 [Def.'s Reply Mem. of Law].)

Finally, in *Lincoln*, the court denied defendant's post-trial motion, which argued that the four-unit residence at issue was nonetheless a single-family house for purposes of the FHA. *Lincoln*, 340 F.3d at 288. In determining whether the residence was a single-family house, the *Lincoln* court discussed *Hogar* and concluded that, because the residents of defendant's property were not members of an extended family living amongst all of the four apartments, the four-unit residence was not a single-family house. *Id.* Here, Defendant argues that the inverse of this holding is that, had there been evidence of occupancy of the four apartments at issue by an extended family, the court would have found that the residence was, as a whole, a single-family house under the FHA. (Dkt. No. 11, at 4 [Def.'s Reply Mem. of Law].)

In addition to these three cases, Defendant argues that *Riccardo*, to which Plaintiffs cite, also supports her argument that it is the nature of the occupancy, rather than design, that is determinative of the inquiry. (*Id.* at 5.) More specifically, Defendant argues that, because the unoccupied apartment in *Riccardo* was being renovated for the purposes of rental and was equipped with separate utilities, Judge Mordue had no trouble finding that the single-family home exemption did not apply. (*Id.*) Conversely, Defendant argues that the Complaint in the present case alleges that the second floor was "vacant and uninhabitable." (*Id.*)

Second, and finally, Defendant reiterates her argument that, because Plaintiffs' FHA claim should be dismissed, the Court should decline to exercise supplemental jurisdiction over their NYSHRL claim. (*Id.* at 6.)

## II.   RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice of* what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id.*

at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]."  *Id.* at 1965.  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability

requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

## III.    ANALYSIS

### A.    Whether the Complaint Alleges Facts Plausibly Suggesting that the Subject Premises Is a Multi-Family House that Is Not Entitled to the Exemption Under 42 U.S.C. § 3603(b)(1)

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memorandum of law and reply memorandum of law. (Dkt. No.

9, at 9-14 [Def.'s Mem. of Law]; Dkt. No. 11, at 2-5 [Def.'s Reply Mem. of Law].)  To those

reasons, the Court adds the following analysis.

Although the conduct alleged in the Complaint is disappointing, the Court agrees with

Defendant that the Complaint fails to allege facts plausibly suggesting that the subject premises

is a multi-family residence.  More specifically, the Complaint does not provide any information

about the upper portion of the subject premises other than that the space was "vacant and

uninhabitable."  There are no allegations regarding whether this space was equipped with

utilities or other amenities such as a bathroom or kitchen that would plausibly suggest that this

space was designed for someone to live in it.  Nor is it alleged that the upper portion of the

residence had a separate entrance, which may have suggested that the residence was more akin to

a duplex.  Plaintiffs are correct that, in *Riccardo*, the court found that the residence at issue was

not exempt under the FHA because the upstairs apartment was undergoing renovations in

anticipation of new tenants living there.  While the apartment may have been uninhabitable during the time that renovations were taking place, it was the intent of the landlord, and the actions of the landlord of actively preparing the space for new tenants, that makes that case distinguishable from the present one.  Indeed, the Complaint does not allege any facts from which this Court could reasonably infer that the upstairs portion of the house was designed to allow another tenant to occupy it or that Defendant had intentions to renovate it so that she could make it available for rent.

Finally, although Plaintiffs appear to argue that the Court should substitute the FHA's definition of "dwelling" for "single-family house," the Court declines to do so.  As other courts have found, "[t]he FHA does not define 'single-family house,'" *Lincoln*, 340 F.3d at 288, and this Court will not attempt to do so.  Furthermore, even if the Court were to apply the FHA's definition of dwelling in this context, the Complaint fails to allege facts plausibly suggesting that the upstairs portion of the house was *designed* for separate occupancy.  For all of these reasons, Defendant's motion to dismiss is granted.

## B.    Whether Plaintiffs Should Be Afforded Leave to Amend Before Dismissal

While generally the Court would be reluctant to *sua sponte* extend to a represented litigant an opportunity to amend his complaint, here the Court finds that a *sua sponte* extension for such an opportunity is appropriate.  Generally, civil rights litigants, such as Plaintiffs, are to be afforded special solicitude in this Circuit.  *See Grant to Wallingford Bd. of Educ*, 69 F.3d 669, 673 (2d Cir. 1995) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "is applied with greater force where the plaintiff alleges civil rights violations") (citation omitted); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (explaining that the liberal

pleading standard set forth in Fed. R. Civ. P. 12[b][6] "is to be applied with particular strictness when the plaintiff complains of a civil rights violation") (citation omitted); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted pro se *or* the plaintiff alleges civil rights violations") (emphasis added); *Dottolo v. Byrne Dairy, Inc.*, 08-CV-0390, 2010 WL 2560551, at *10 (N.D.N.Y. June 22, 2010) (Suddaby, J.) (*sua sponte* granting a represented civil rights plaintiff an opportunity to amend his complaint). One of the practical effects of such special solicitude is to allow a plaintiff to amend his complaint before dismissal unless the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. Here, the Court has difficulty finding that the referenced defects in Plaintiffs' Complaint are substantive.

For these reasons, before the Court dismisses Plaintiffs' FHA claim, the Court will afford them an opportunity to file an Amended Complaint correcting the pleading defects in their Complaint within thirty (30) days from the filing date of this Decision and Order. Plaintiffs are reminded that their Amended Complaint must be a complete pleading that will replace and supersede the original complaint in its entirety. In addition, Plaintiffs are cautioned that, if they fail to file an Amended Complaint that states a claim upon which relief can be granted with respect to their FHA claim, this claim (i.e., the first cause of action in the Complaint) will be dismissed without further Order of the Court. Finally, in the event that Plaintiffs' FHA claim is dismissed with prejudice, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' NYSHRL claim and that claim will be dismissed without prejudice to refiling in New York State Court within thirty (30) days of the dismissal, also without further Order of the Court.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss the Complaint's first cause of action

(Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' first cause of action shall be **DISMISSED WITH**

**PREJUDICE** and their second cause of action shall be **DISMISSED WITHOUT**

**PREJUDICE** without further Order of the Court unless, within **THIRTY (30) DAYS** of the

filing date of this Decision and Order, Plaintiffs file an Amended Complaint that states a claim

under the FHA upon which relief may be granted.

Dated: June 23, 2016
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge