UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————————

ADAM RICHARD KLYCZEK; and HOUSING
OPPORTUNITIES MADE EQUAL, INC.,

                          Plaintiffs,

                                                        1:15-CV-0963 (GTS)
v.

CATHERINE STRAMAGLIA SHANNON,

                          Defendant.
————————————————————————

APPEARANCES:                                    OF COUNSEL:

WESTERN N.Y. LAW CENTER, INC.                   MATTHEW A. PARHAM, ESQ.
   Counsel for Plaintiffs
237 Main Street, Suite 1130
Buffalo, New York 14203

PERSONIUS MELBER, LLP                           RODNEY O. PERSONIUS, ESQ.
   Counsel for Defendant
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202

GLENN T. SUDDABY, Chief United States District Judge,
United States District Court for the Northern District of New York[1]

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Adam Klyczek and Housing

Opportunities Made Equal, Inc. ("Plaintiffs") against Catherine Shannon ("Defendant"), is

Defendant's motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon

———————————————

        [1]        Due to the claims in this action being asserted against Defendant, who is employed by the
United States District Court for the Western District of New York, this action was temporarily assigned to
Chief Judge Suddaby of the Northern District of New York by Chief Judge Robert A. Katzmann of the
United States Court of Appeals for the Second Circuit.  (Dkt. No. 4; Docket Entry dated Dec. 29, 2015.)

which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) and/or motion for summary

judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 14.)  For the reasons set forth below,

Defendant's motion is denied.

## I.     RELEVANT BACKGROUND

### A.     Plaintiffs' Amended Complaint

The Court previously granted Defendant's motion to dismiss Plaintiffs' original

Complaint on the basis that it failed to allege facts plausibly suggesting that the residence

Defendant leased to Plaintiff Klyczek was a multi-family house for purposes of the Fair Housing

Act ("FHA"), 42 U.S.C. § 3603.  (Dkt. No. 12, at 12-13 [Decision and Order].)  However, in

addition, the Court *sua sponte* granted Plaintiffs the opportunity to file an Amended Complaint

due to their status as civil rights litigants who are entitled to special solicitude as well as the

Court's determination that the defects in their original Complaint were merely formal, rather

than substantive.  (*Id.* at 14.)  Based upon a review of the Amended Complaint, the Court finds

that it repeats almost all of the factual allegations contained in the original Complaint.  (*See id.* at

2-5.)  Accordingly, for purposes of brevity, the Court will not once again summarize those

allegations.  Rather, the Court will set forth the four new paragraphs contained in the Amended

Complaint:

> Mr. Klyczek viewed the lower apartment at 2022 Independence
> and, on or around October 27, 2014, executed a month-to-month
> rental agreement for that apartment with Defendant Shannon.  The
> upper apartment in the building was vacant and uninhabitable and
> during their meeting Ms. Shannon stated to Mr. Klyczek that the
> house was a multifamily house and he would be renting only the
> downstairs apartment, but that he would be the only tenant in the
> house for at least a few months while she was renovating the
> upstairs apartment to accommodate a second tenant.  Throughout
> Mr. Klyczek's tenancy Ms. Shannon had contractors at the upper
> apartment performing renovations.

According to public records in the City of Niagara Falls, the house at 2022 Independence Avenue is classified for use as a "2 Family Res[idence]."  The house, both according to the public record and the perception of Mr. Klyczek when he lived there, had two kitchens, two bathrooms, and two gas and electric meters, serving the separate upper and lower apartments.  The units had separate entrances, with a concrete path leading from the street to a porch in the front of the house through which a door entered into the lower unit, and a separate concrete path from the sidewalk leading around the side of the house to a door opening to a stairway that could be taken to the upper level to enter the upper unit through a locked door.

When Mr. Klyczek, during his tenancy, was considering an offer to purchase the house, he viewed the upper apartment by entering it from its separate outside entrance and noted that although the plumbing, heating system, and wiring appeared to be partially dismantled and there were holes in the floor, it appeared to have a functioning bathroom and had a separate kitchen (though the appliances for the upstairs kitchen were stored in the garage during renovations), and was clearly designed, structured, and intended to function as a separate, self-contained apartment within the two-unit building.

When Ms. Shannon was attempting to sell the house some months after Mr. Klyczek's eviction, realtors acting on her behalf listed the house as a "2 unit" and stated in advertising materials that a buyer could "live in lower unit and rent out upper to help pay mortgage. . . ."

(Dkt. No. 13, ¶¶ 13-16 [Pls.' Am. Compl.].)

**B.      Parties' Briefing on Defendant's Motion**

**1.      Defendant's Memorandum of Law**

Defendant asserts four arguments in support of her motion to dismiss.  (Dkt. No. 16 [Def.'s Mem. of Law].)  First, Defendant argues, in order to determine whether a particular structure qualifies for the "single-family house" exemption under the FHA, consideration must be given to the fashion in which the property was used or the manner of occupancy during the time period relevant to the litigation, and the design of the structure should not be given

controlling consideration.  (*Id.* at 7.)[2]  In support of this argument, Defendant cites the four cases

discussed previously in the Court's Decision and Order.[3]  (*Id.*)  Defendant further argues that this

position was adopted by the Court in deciding to grant Defendant's first motion to dismiss and

should be applied again in determining whether to dismiss Plaintiffs' Amended Complaint.  (*Id.*

at 7-8.)

Second, Defendant argues, each of the four new paragraphs (i.e., ¶¶ 13-16, stated above)

in Plaintiffs' Amended Complaint fail to allege facts plausibly suggesting that the subject

premises was used as a multi-family residence during Plaintiff Klyczek's tenancy.  (*Id.* at 9.)

More specifically, with regard to Paragraph 13 of the Amended Complaint, Defendant argues

that Plaintiffs admit, once again, that the upper portion of the residence was "vacant and

uninhabitable."  (*Id.*)  Furthermore, Defendant has submitted an affidavit, which she argues

controverts the following other assertions in Paragraph 13: (a) that she stated to Plaintiff Klyczek

that the residence was a multi-family house, that he would be renting only the downstairs

apartment, and that he would be the only tenant for a period of time while the upstairs apartment

was renovated to accommodate a second tenant; and (b) that she had contractors at the residence

performing renovations in the upper apartment throughout Plaintiff Klyczek's tenancy.  (*Id.* at 9-

10.)  Defendant further argues that, had renovations been ongoing, Plaintiff would not have

observed that the plumbing and heating system in the upper apartment were partially dismantled

---

[2]      Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the parties' respective motion papers.

[3]      These cases are *Hogar Aguay Vida en el Desierto v. Suarez*, 829 F. Supp. 19
(D.P.R. 1993), *Ho v. Donovan*, 569 F.3d 667 (7th Cir. 2009), *Lincoln v. Case*, 340 F.3d 283, 287
(2003), and *Riccardo v. Cassidy*, 10-CV-0462, 2012 WL 651853 (N.D.N.Y. Feb. 28, 2012)
(Mordue, J.).

and that there were holes in the floor, as alleged in Paragraph 15 of the Amended Complaint. (*Id.* at 10-11.)  To the contrary, Defendant argues that any renovations to the upper apartment were not contemplated until Plaintiff Klyczek's tenancy was near its end, which is corroborated by the assertions in Paragraph 24 of the Amended Complaint that allege that, "[o]n May 17, 2015, Defendant Shannon informed Mr. Klyzcek by text message that she needed him out . . . so that she could have contractors work on the house to get it ready to sell." (*Id.* at 10-11.) Defendant argues that, if renovations had been ongoing during Plaintiff Klyczek's tenancy, then renovations would not have been necessary in May of 2015.  (*Id.* at 11.)

With regard to Paragraph 14 of the Amended Complaint, Defendant argues that the allegations are irrelevant because they relate to how the residence is described in public records (i.e., its design) and provide no information regarding how it was used by Defendant or how it was occupied by Plaintiff Klyczek.  (*Id.* at 11-12.)  Although Paragraph 14 alleges that the residence has separate gas and electric meters, Defendant states in her accompanying affidavit that this is not true; rather, the residence has a single gas meter and a single electric meter servicing the entire home.  (*Id.*)

With regard to Paragraph 15 of the Amended Complaint, Defendant argues that the allegations are once again irrelevant because they pertain to the design of the residence and do not address the use or manner of occupancy of the house during the relevant time period.  (*Id.* at 12.)  Furthermore, Defendant argues that the allegation that appliances for the upstairs kitchen were stored in the garage during renovations is factually incorrect because (a) there were no renovations performed in the upper apartment during Plaintiff Klyczek's tenancy and, therefore, there was no need to store appliances in another location, and (b) although there was a single oven stored in the garage, the oven was purchased for use in the lower portion of the residence,

which is corroborated by the oven's purchase receipt and an e-mail exchange between Defendant and Plaintiff Klyczek.  (*Id.* at 12-13.)

With regard to Paragraph 16 of the Amended Complaint, Defendant argues that the allegations related to the description of the property in a real estate listing, and whether it could be used as a single-family or multi-family residence, are irrelevant to the use or manner of occupancy of the house during Plaintiff Klyczek's tenancy.  (*Id.* at 13-14.)

Third, Defendant argues, in the event that Plaintiffs' FHA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over their NYSHRL § 296 claim, which should therefore be dismissed as well.  (*Id.* at 14.)

Fourth, and finally, Defendant argues, to the extent that her motion to dismiss relies on materials outside the four corners of the pleadings, the Court should "convert" her motion to dismiss to one for summary judgment and enter summary judgment in her favor.  (*Id.* at 3, n.1.) Defendant notes that she has submitted a statement of material facts in compliance with Local Rule 56(a)(1) of the Local Rules of Practice for the Western District of New York.  (*Id.*)

## 2.    Plaintiffs' Opposition Memorandum of Law

Plaintiffs assert the following three arguments in opposition to Defendant's motion. (Dkt. No. 19 [Pls.' Opp'n Mem. of Law].)  First, Plaintiffs reiterate their argument raised in opposition to Defendant's first motion to dismiss that there is no authority for Defendant's position that the single-family exemption is construed solely based on the use and/or manner of occupancy of the residence.  (*Id.* at 9-10.)  Instead, Plaintiffs argue that the applicability of the single-family exemption should be determined only after taking all facts into consideration (i.e., the actual use of the residence, its design, structure, and/or how the owner intends to use it). (*Id.* at 11-12.)  Plaintiffs argue that this approach is consistent with case precedent dictating that

the FHA be construed broadly and its exemptions construed narrowly.  (*Id.* at 11.)  In addition, Plaintiffs argue that Defendant misconstrues the Court's previous decision and that the Court did not adopt Defendant's position regarding this issue.  (*Id.* at 10-11.)

Second, Plaintiffs argue that the extrinsic evidence submitted by Defendant should not be considered by the Court unless it converts Defendant's motion to one for summary judgment, which would be inappropriate in this instance because there has not been an opportunity for discovery. (*Id.* at 12-13.)  Furthermore, Plaintiffs argue that, even if the Court were to convert Defendant's motion to one for summary judgment, Defendant incorrectly assumes that the Court will engage in a credibility determination when reviewing the assertions in her affidavit, which would be necessary because no objective and/or conclusive evidence has been presented in support of her assertions.  (*Id.* at 13.)  In any event, even if the affidavit is deemed credible by the Court, Plaintiffs argue that it admits enough facts to demonstrate that the single-family exemption does not apply because Defendant admits that (a) the residence contained two separate, self contained units with separate entrances, kitchens, and bathrooms, (b) she conducted renovations of the vacant upper unit during and after Plaintiff Klyczek's tenancy, and (c) she advertised the property for sale as a multi-family residence.  (*Id.* at 12-16.)

Third, and finally, Plaintiffs argue that, because there is no basis for dismissing their federal claims, the Court should retain supplemental jurisdiction over their NYSHRL § 296 claim.  (*Id.* at 16-17.)

### 3.     Defendant's Reply Memorandum of Law

Generally, Defendant asserts the following three arguments in reply to Plaintiffs' opposition memorandum of law.  (Dkt. No. 20 [Def.'s Reply Mem. of Law].)

First, Defendant reiterates her argument that a property's use or manner of occupancy is the controlling consideration in determining whether the single-family exemption applies. (*Id.* at 3-4.) Defendant further argues that *Riccardo v. Cassidy*, which Plaintiffs rely upon in support of their position, is factually distinguishable from the present matter because, as this Court noted on page 13 of its previous Decision and Order, "it was the intent of the landlord, and the actions of the landlord of actively preparing the space for new tenants, that makes [*Riccardo*] distinguishable from the present [case]." (*Id.* at 5.) Defendant argues that her affidavit makes clear that she never intended to accommodate a second tenant, nor did she take actions to prepare the space for one during Plaintiff Klyczek's tenancy. (*Id.*)

Second, Defendant argues that "converting" her motion to one for summary judgment would be appropriate for the following four reasons: (1) she has complied with W.D.N.Y. L.R. 56(a)(1) by filing a Statement of Material Facts; (2) although discovery has not yet been conducted, it is within the discretion of the Court to grant a pre-discovery request to convert the motion; (3) Plaintiffs were well aware of the possibility that conversion might occur because (a) Defendant specifically requested that her motion be converted in her moving papers, and (b) Plaintiffs responded to that request in their opposition to the motion and, therefore, had an opportunity to dispute the facts asserted in the affidavit; and (4) Plaintiffs have failed to state what information they reasonably expect to be uncovered regarding the single-family exemption issue if discovery was to be conducted. (*Id.* at 6-8.)

Third, Defendant argues that entering summary judgment in her favor would be appropriate for the following six reasons: (1) the amendments to Paragraph 13 in Plaintiffs' Amended Complaint, which include allegations that Defendant told Plaintiff Klyczek that she

was renovating the upstairs apartment to accommodate a second tenant and that there were contractors in the upper apartment throughout his tenancy, have been shown to be patently false; (2) the allegations in Paragraph 14 regarding how the property is described in public records are not relevant to the Court's inquiry because they relate to the property's design; (3) the allegation that the residence had separate gas and electric meters has been shown to be false by Defendant's affidavit and supporting documentation; (4) the allegations in Paragraph 15 are irrelevant to the Court's inquiry because they once again relate to the property's design and not the way it was used during Plaintiff Klyczek's tenancy; (5) the allegation in Paragraph 15 that appliances for the upstairs kitchen were stored in the garage has been shown to be false by Defendant's affidavit and supporting documentation; and (6) the new allegations in Paragraph 16 address only the design and structure of the residence and, therefore, are irrelevant to the use or manner of occupancy during Plaintiff Klyczek's tenancy. (*Id.* at 8-10.)

## II.   RELEVANT LEGAL STANDARD

For the sake of brevity, the Court will not recite the well-known legal standard governing motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) but will refer the reader to Part II of its Decision and Order dated June 23, 2016, which accurately recites that standard. (Dkt. No. 12.) Rather, the Court will merely add a description of what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and

provided by the parties), (3) documents that, although not incorporated by reference, are

"integral" to the complaint, or (4) any matter of which the court can take judicial notice for the

factual background of the case.[4]

## III.   ANALYSIS

### A.   Whether the Amended Complaint Alleges Facts Plausibly Suggesting that the Premises Is a Multi-Family Residence

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Plaintiffs in their opposition memorandum of law. (Dkt. No. 19, at 9-12

[Pls.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

---

[4]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

To decide this question, the Court must first determine how the FHA's single-family exemption should be interpreted.  As recognized by the parties in their respective motion papers, as well as in this Court's previous Decision and Order, "[t]he FHA does not define 'single-family house.'" *Lincoln v. Case*, 340 F.3d 283, 288 (5th Cir. 2003); *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 184 (1st Cir. 1994) (noting that FHA § 3603[b][1] does not define the term "single-family house").  Where, as here, "the plain meaning of a statute is susceptible to two or more reasonable meanings, i.e., if it is ambiguous, . . . a court may resort to the canons of statutory construction." *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001).  Because the FHA is a remedial statute, courts have recognized that its ambiguous language "is entitled to a generous construction consistent with its reformative mission." *Hogar*, 36 F.3d at 181; *accord*, *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994).  Similarly, the FHA's exemptions should be narrowly construed to limit exemption eligibility.  *Hogar*, 36 F.3d at 182 (stating that "exemptions from the requirements of a *remedial statute*–like the FHA–are to be construed narrowly to limit exemption eligibility"); *accord*, *U.S. v. Columbus Country Club*, 915 F.2d 877, 883 (3d Cir. 1990).

In support of their respective positions regarding the proper interpretation of "single-family house," the parties analyze and distinguish four principle cases, which are cited above in note three of this Decision and Order.[5]  These cases were discussed in the Court's previous

---

[5]      With respect to these cases, Defendant attempts to adopt and incorporate the arguments that she made in support of her first motion to dismiss.  (Dkt. No. 16, at 7 n.3 [Def.'s Mem. of Law]; Dkt. No. 20, at 4 n.2 [Def.'s Reply Mem. of Law].)  However, this practice is impermissible because (1) it violates the Western District's rule on page limitations (W.D.N.Y. L.R. 7[a][2][C]), and (2) confuses the Court as to which particular incorporated arguments are actually relied upon.  *Cf. Knight v. Fed. Nat'l Mortg. Ass'n*, 13-CV-0183, 2014 WL 4901617, at *12 (N.D.N.Y. Sept. 30, 2014) (Suddaby, J.).

Decision and Order; however, for purposes of the Court's analysis, it is worth briefly summarizing them once again here.

In *Hogar*, the United States District Court for the District of Puerto Rico found that a two-story house, comprised of separately equipped single-family apartments on each floor, constituted a single-family house. *Hogar*, 829 F. Supp. at 22. The defendant and his family lived primarily in one apartment, while the defendant's son lived in the other. *Id.* Due to physical impairments, however, the defendant lived "interchangeably" in both apartments, leading the court to conclude that it was a single-family residence.[6] *Id.*

In *Donovan*, a condo had been subdivided and rented to three unrelated occupants who shared a kitchen and a bathroom. *Donovan*, 569 F.3d at 679. The Seventh Circuit found that the condo was not a single-family dwelling because "Fung rented it to three unrelated persons; that's not a single family by anyone's definition." *Id.* at 682.

In *Lincoln*, the Fifth Circuit denied defendant's post-trial motion, which argued that the four-unit residence at issue was nonetheless a single-family house for purposes of the FHA. *Lincoln*, 340 F.3d at 288. In determining whether the residence was a single-family house, the Fifth Circuit discussed *Hogar* and concluded that, because the residents of defendant's property were not members of an extended family living amongst all of the four apartments, the four-unit residence was not a single-family house. *Id.*

---

[6]     It should be noted that the district court's decision was vacated and remanded by the First Circuit. *Hogar*, 36 F.3d at 179. However, the parties stipulated that the properties at issue qualified as single-family houses. *Id.* at 182. Therefore, the First Circuit declined to express an opinion regarding whether those stipulations were correct and noted that "no precedential significance should be ascribed to our acceptance of these stipulations." *Id.* at n.4, n.6.

Finally, in *Riccardo*, the residence at issue involved a two-story building with two separate apartments.  *Riccardo*, 2012 WL 651853, at *1.  The plaintiff occupied the first floor apartment but signed a lease-purchase agreement giving him sole rights to rent or use the second floor apartment as well.  *Id.*  However, after plaintiff's wife left him, he agreed to a new lease with the building's owner which limited his access to the first apartment only.  *Id.* at *2.  After this agreement was reached, the landlord began renovating the second apartment to prepare it for new tenants.  *Id.* at *3.  Although the single-family house exemption was not raised by the defendant, or discussed by the court, Plaintiffs argued in their opposition to Defendant's previous motion to dismiss that *Riccardo* is analogous to the present case because both cases involve a two-unit building where one unit is vacant and uninhabitable due to ongoing renovations.  (Dkt. No. 10, at 8 [Pls.' Opp'n Mem. of Law].)

After carefully reviewing these cases, the Court finds that the determination of what constitutes a "single-family house" is based on both the house's design and its use.  More specifically, the Court finds that it must determine whether the house was, during the time of the alleged discrimination, either designed for use by multiple families or in the process of being converted according to such a design, and whether the occupants of the units are members of the same family so as to make the house, in a literal sense, a single-family house.  *See Hogar*, 36 F.3d at 182 n.4 (noting that "entitlement to an FHA exemption turns on highly fact-dependent inquiries [e.g., the structural design or usage of each dwelling]").  Indeed, the courts in *Hogar*, *Donovan* and *Lincoln* appear to have made their respective determinations based upon whether the occupants of different living units were members of the same family and not based strictly on design.  These cases support Defendant's position that the determination should be based on use

-13-

and/or manner of occupancy.  However, the Court finds that strictly considering the use or

manner of occupancy would produce results inconsistent with the FHA's remedial function.  For

example, a landlord of a four apartment building with only one tenant could claim that he/she is

entitled to the single-family exemption.  This would be an absurd result if the apartments are

habitable and the landlord intends to rent them upon finding suitable tenants.  In such an

instance, the Court believes that the design of the structure must be taken into consideration as

well.  *Cf. Lamb v. Sallee*, 417 F. Supp. 282, 285 (E.D. Ky. 1976) (stating that, "in the Court's

opinion, the language of the [FHA] precludes the possibility that a duplex can be considered a

'single-family house' within the meaning of the statute").[7]

In the present case, the Court finds that the Amended Complaint alleges facts plausibly

suggesting that the subject premises is a multi-family residence.  Specifically, the Amended

Complaint alleges that (1) both apartments in the house had separate entrances, kitchens, and

bathrooms, (2) the house was described as a multi-family residence in both public records and in

Defendant's real estate listing, and (3) Defendant had begun the process of renovating the upper

apartment during Plaintiff Klyczek's tenancy and stated that she was doing so in order to

accommodate a second tenant.  (Dkt. No. 13, ¶¶ 13-16 [Pls.' Am. Compl.].)  These factual

allegations, taken together, plausibly suggest that the residence was a multi-family house, despite

the fact that Plaintiff Klyczek was the only tenant residing there and that the upper apartment

---

[7]    To the extent that Defendant perceives this ruling to be inconsistent with the
Court's Decision and Order of June 23, 2016, the Court advises Defendant that the latter
Decision and Order ruled merely that the Complaint failed to allege facts plausibly suggesting
that the premises was a multi-family residence.  In so doing, the Court indicated that among the
relevant allegations missing from the Complaint were those regarding whether the upstairs
portion of the premises was designed for someone to live in it.

was vacant and uninhabitable while renovations were allegedly occurring.  Indeed, these

allegations make this matter analogous to *Riccardo* where, as discussed above, it appeared

undisputed by the parties that the building was a multi-family residence because a second

apartment would become available for rent as soon as renovations were completed.  Although

Defendant disputes these allegations through extrinsic evidence, the Court, for the reasons

discussed below in Part III.B. of this Decision and Order, will not consider that evidence at this

time.[8]

> **B.     Whether Defendant's Alternative Motion for Summary Judgment Should Be
> Granted**

After carefully considering the matter, the Court answers this question in the negative for

the reasons discussed below.

As a threshold matter, the Court notes that Defendant's request for "conversion" is either

inarticulate or nonsensical.  This is because, when read in their entirety, Defendant's motion

papers do not request that the Court convert her motion to dismiss to one for summary judgment

pursuant to Fed. R. Civ. P. 12(d).  Rather, Defendant's motion papers expressly request that the

Court grant her summary judgment to the extent her motion relies on materials outside the four

corners of the Amended Complaint.  *See Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg.*

*Co.*, 23 F. Supp. 2d 974, 1000 (N.D. Iowa 1998) ("The court concludes that it is not necessary to

---

[8]      The Court notes, however, that it did consider the real estate listing for the subject premises, which is attached to Defendant's affidavit as Exhibit "E" and incorporated by reference by paragraph 16 of the Amended Complaint.  (Dkt. No. 17, Attach. 1, at 15-17 [Def.'s Ex. E].)  This listing advertises the property as follows: "This is a fanctastic [sic] 2 unit or could be used as single residential.  Great owner occupied also; live in lower unit and rent out upper to help pay mortgage or living space.  Double sized lot, plenty of parking with 1.5 car garage plus 2 space carport, full basement." (*Id.* at 16.)  Because the listing advertises the property as a potential multi-family residence, this document does not alter the Court's analysis.

'convert' this portion of Automatic's motion to dismiss into a motion for summary judgment, because Automatic has already couched its motion in the alternative as one for summary judgment pursuant to Rule 56.").

Turning to the merits of Defendant's alternative request for summary judgment, the Court finds that such alternative relief would be premature under Fed. R. Civ. P. 56(d).  Granted, Plaintiffs do not state in an affidavit or declaration what facts they reasonably expect would be revealed if discovery were conducted.  The failure to file such an affidavit or declaration does not, of course, compel the rejection of a finding of prematurity.  *See, e.g.*, *Osterhout v. Air & Liquid Sys. Corp.*, 14-CV-0208, 2014 WL 2435314, at *2 (N.D.N.Y. May 30, 2014) (D'Agostino, J.) ("[T]he Removing Defendants failed to submit an affidavit in support of their argument, pursuant to Rule 56(d). . . .  Nevertheless, the Court is entitled to exercise its discretion to assure "the just, speedy, and inexpensive determination" of any action pending before it. *See* Fed. R. Civ .P. 1. The Court is not convinced that adjudication of Plaintiffs' motion for partial summary judgment at this time would achieve the goals set forth in Rule 1."). However, it is clear from the docket that Plaintiffs have not had an adequate opportunity to conduct discovery.  In particular, Plaintiffs reasonably need the opportunity to challenge the veracity of the assertions made in Defendant's affidavit through a deposition or to dispute those assertions through other proper means.  Indeed, a substantial amount of the information regarding the subject premises is likely in Defendant's possession and, for the reasons discussed above in Part III.A. of this Decision and Order, the alleged renovations in the upper apartment of the residence, as well as Defendant's alleged intentions in preparing the upper apartment for a second tenant, are relevant to whether the single-family exemption is applicable.  Accordingly,

for all of these reasons, Defendant's motion for summary judgment is denied without prejudice. *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 677 n.1 (S.D.N.Y. 2009) ("[B]efore a Court grants summary judgment, the non-movant 'must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.' Thus, summary judgment may be premature before an adequate opportunity for discovery.  In the instant proceedings[, plaintiff] has not had the opportunity to conduct discovery that could uncover evidence to support her allegations.  The Court accordingly denies [defendant's] motion for summary judgment without prejudice . . . and treats [defendant's] motion only as a motion [to] dismiss."); *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 330 (E.D.N.Y. 2009) ("[T]he Court declines to convert the motion to dismiss into a motion for summary judgment because . . . plaintiff is entitled to conduct discovery before making its presentation of evidence in response to any potential summary judgment motion."); *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) ("Although conversion to a summary judgment motion is necessary where a court elects to consider matters outside the pleadings, the decision whether to convert is a matter for the court's discretion. That discretion will not be exercised here. Discovery has not begun yet, as plaintiff itself complains.").

      **ACCORDINGLY,** it is

      **ORDERED** that Defendant's motion to dismiss the Amended Complaint (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

ORDERED that Defendant's alternative motion for summary judgment is **<u>DENIED</u>**

**without prejudice**; and it is further

ORDERED that Defendant file an answer to the Plaintiffs' Amended Complaint within

14 days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a).

Dated: December 1, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge